**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| *In re:* | § | |
| | § | |
| **WILLIAM CLEMENT ARCHER,** | § | **Case No. 18-10928-TMD** |
| | § | |
| *Debtor in Possession.* | § | **(Chapter 11)** |

**DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION**
**DATED MARCH 11, 2019**

DATED:    March 11, 2019          B. WELDON PONDER, JR.
Austin, Texas           Attorney at Law
State Bar of Texas No. 16110400
4408 Spicewood Springs Road
Austin, Texas 78759
Office Phone:  (512) 342-8222
Fax:  512) 342-8444
Cell Phone: (512) 422-3403
email address:  welpon@austin.rr.com

ATTORNEY FOR WILLIAM CLEMENT
ARCHER, DEBTOR IN POSSESSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| *In re:* | § | |
| | § | |
| WILLIAM CLEMENT ARCHER, | § | Case No. 18-10928-TMD |
| | § | |
| *Debtor in Possession.* | § | (Chapter 11) |

## DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION
## DATED MARCH 1, 2019

WILLIAM CLEMENT ARCHER, the debtor in possession herein, (the "Debtor") proposes the following Second Amended Plan of Reorganization Dated March 11, 2019 (the "Plan") pursuant to Chapter 11, Title 11, United States Code ("Bankruptcy Code" or "Code").

## ARTICLE I
## DEFINITIONS AND USE OF TERMS

1.01    **Defined Terms.** Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

1.01(a)    **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503 and entitled to administrative priority pursuant to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331, and all fees and charges assessed against the Debtor or his property under 28 U.S.C. § 1930, which arose after July16, 2018.

1.01(b)    **Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a proof of claim, proof of interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent or unliquidated, and to which no objection has been timely filed or, if filed, is allowed by a Final Order.

1.01(c)    **Allowed Secured Claim** means an Allowed Claim secured by a lien, security interest or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.01(d)    **Balloon Payment** means the final payment under the Plan to the holders of General Unsecured Claims that will occur on the eighth anniversary of the Effective Date, if and only if such Creditors have not paid in full with interest by that date. The amount of each such Creditor's Balloon Payment shall be the total amount still owed to such Creditor on that date, including all accrued but unpaid interest owed under the Plan.

1.01(e)  **Bankruptcy Case** means this Chapter 11 case in this Bankruptcy Court.

1.01(f)  **Bankruptcy Code** means the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

1.01(g)  **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other Court that may have jurisdiction with respect to Debtor's Chapter 11 case.

1.01(h)  **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's Chapter 11 case.

1.01(i)  **Bar Date** means the date subsequent to which a proof of pre-petition Claim may not timely be filed or the date by which proofs of claims held by governmental agencies must be filed.  The Bar Date in this Case was November 13, 2018.

1.01(j)  **Bull Creek Explorer** means Bull Creek Explorer, LLC, the Debtor's wholly-owned limited liability company.

1.01(k)  **Business Day** means a day that the office of the Clerk of the Bankruptcy Court is open for business as usual.

1.01(l)  **Case** means the Bankruptcy Case.

1.01(m)  **Catarina** means Catarina Construction, LLC, the Debtor's wholly-owned limited liability company, which is no longer active.

1.01(n)  **Claim** means (i) any right to payment by the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from either or both of the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.01(o)  **Claimant** means any person or entity having or asserting a Claim in this case.

1.01(p)  **Class** or **Classes** mean all Claims against the Debtor that he has designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics, as described in Article V of this Plan.

1.01(q)  The **Code** means the Bankruptcy Code.

1.01(r)  **Confirmation** means the entry by the Bankruptcy Court of an order confirming this Plan.

1.01(s)  **Confirmation Date** means the date the Confirmation Order is entered.

1.01(t)  **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1129.

1.01(u)  **Contested**, when used with respect to a Claim, means a Claim against the Debtor that (a) is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent or unliquidated; (b) is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) has been or is subject to an objection being timely filed that has not been denied by Final Order.  To the extent an objection is related to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the Objection.

1.01(v)  **Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Code.

1.01(w)  **Debtor** means William C. Archer.

1.01(x)  **Disputed Claim** means any Claim as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by Final Order.

1.01(y)  **Effective Date** means the first Business Day after the Confirmation Order becomes a Final Order.

1.01(z)  **Estate** means the estate created pursuant to 11 U.S.C. §§ 541 and 1115 with respect to the Debtor.

1.01(aa)  **Fee Claim** means a Claim under 11 U.S.C. § 330 or § 503 for allowance of compensation and reimbursement of expenses to professionals in this Case.

1.01(bb)  **Filed** means delivered to the Clerk of the Bankruptcy Court or filed electronically with the Bankruptcy Court.

1.01(cc)  **Final Order** means an Order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties as to which the time to appeal has expired and as to which a stay pending appeal has not been granted.

1.01(dd)  **General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a).

1.01(ee)  **Homestead** means 1711 Meadowbrook Drive, Austin, Texas 78703, the residence of the Debtor.

1.01(ff)  **Impaired** means the treatment of an Allowed Claim pursuant to the Plan *unless,* with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (i) cures any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind

specified in 11 U.S.C. § 365(b)(2), (ii) reinstates the maturity of such Claim as such maturity existed before such default, (iii) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

1.01(gg) **Initial Payments** means those interest-only Plan payments to Creditors that are required to be made prior to the first Sale or Lease Proceeds Payment under the Plan.

1.01(hh) **Lease Proceeds Payments** means those payments to Creditors that are required under the Plan to be made from the Debtor's distributions from Bull Creek Explorer's share of the proceeds of D71's lease, including ground leases, of some or all of the Property.

1.01(ii) **Lien** shall mean a contractual or statutory lien against an interest of the Debtor in real or personal property.

1.01(jj) **Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent, in which case such governmental unit shall be considered a person for purposes of 11 U.S.C. § 1102 Code.

1.01(kk) **Petition Date** means July 16, 2018, the date on which the Debtor filed his petition for relief in this Case.

1.01(ll) **Plan** means this Second Amended Plan of Reorganization Dated March 11, 2019, as it may be further amended, modified or supplemented by the Debtor from time to time as permitted herein and by the Bankruptcy Court.

1.01(mm) **Pre-petition** means prior to the Petition Date.

1.01(nn) **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

1.01(oo) The **Property** means approximately 80 acres land owned by D71 and located at the intersection of E. State Highway 71 and Kellam Road, east of Austin Bergstrom International Airport.

1.01(pp) **Pro Rata** means proportionately, based on the percentage that the amount of a Claim is of the total of Allowed Claims in its Class.

1.01(qq) **Property of the Estate** means all property in which either or both of the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. §§ 541 and 1115.

1.01(rr) **Reorganized Debtor** means the Debtor after the Effective Date of the Plan.

1.01(ss) The **Rules** means the Bankruptcy Rules.

1.01(tt) **Sale Proceeds Payments** means those payments to Creditors that are required under the Plan to be made from the Debtor's distributions from Bull Creek Explorer's share of the proceeds of D71's sale(s) of some or all of the Property.

1.01(uu) **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest, in property in which the Debtor has an interest to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.01(vv) **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

1.01(ww) **Settlement Agreement** means the Compromise and Settlement Agreement and Full, Final and Complete Release and Indemnity Agreement between Summit, the Debtor and Catarina, together with the Supplement to the Compromise and Settlement Agreement and Full, Final and Complete Release and Indemnity Agreement between those parties.

1.01(xx) The **Sixth Street Building** means the commercial building located at 717 and 719 West Sixth Street, Austin, Texas 78701, owned by Bull Creek Explorer.

1.01(yy) **Summit** means The Summit at Lake Travis, LLC, a creditor of the Debtor.

1.01(zz) **Unsecured Claim** means any Claim against the Estate that is not a Secured or Administrative Claim.

1.02     **Gender.**  Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context.  Words of any gender shall include each other gender where appropriate.

1.03     **Terms Defined in the Bankruptcy Code.**  Capitalized terms not specifically defined Section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

1.04     **Headings.**  The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

1.05     **Computation of Time.**  In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE II
## BASIS OF PLAN

2.01     **Generally.**  The Plan is a plan of reorganization.  The funds needed to make the payments required under the Plan will come from Debtor's distributions from Bull Creek Explorer, including those attributable to partner distributions from D71 to Bull Creek Explorer from the sale and/or ground lease of the Property owned by D71.

3.01    **Treatment of Claims.**  This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a). However, only Allowed Claims will receive treatment afforded by the Plan. The Plan is designed to ensure that Creditors shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

3.02    **Allowed Claims**.  To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

3.03    **Amount of Claims**.  If the Debtor has scheduled a Claim and has not scheduled such Claim as disputed, contingent, or unliquidated, then the amount scheduled by the Debtor shall control, unless the holder of the Claim files a proof of claim in a different amount or a party in interest files an objection to the scheduled Claim. If a Creditor files a proof of claim, then the amount stated in the proof of claim shall control unless a party in interest files an objection to the Claim. If a party in interest files an objection to a proof of claim or a scheduled Claim, then the amount determined by the Court in a Final Order shall control. If a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

3.04    **Allowance of Post-Petition Interest, Fees and Costs**.  Unless otherwise provided, a Claim shall not be entitled to post-petition interest, fees or costs.

3.05    **Filing of Administrative Claims**.

3.05.1  Except as provided in Paragraphs 3.05.2 and 3.06 below, any requests for allowance of an Administrative Expense Claim shall be filed no later than thirty (30) days after the Effective Date or shall be barred.

3.05.2  <u>Administrative Claim of Travis County</u>. Notwithstanding Paragraph 3.05.1, it shall not be necessary for Travis County to file any claim or request for payment of 2019 taxes pursuant to 11 U.S.C. § 503(b)(1)(D).

3.06    **Filing of Requests for Post-Petition Fees or Costs**.  Any requests for allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed no later than (60) days after the Effective Date or shall be barred.

3.07    **Objections to Claims.**  Any party authorized by the Bankruptcy Code may object to the allowance of a Pre-Petition Claim at any time prior to the later of sixty (60) days after the Effective Date or thirty (30) days after such Claim is filed. Any proof of claim filed after the applicable Bar Date set by the Court shall be of no force and effect and shall be deemed disallowed.

3.09    Any objection must comply with Local Bankruptcy Rule 3007, be in writing, set out the name of the Creditor who filed the Claim (and any assignee), the dollar amount of the Claim and the character of the Claim. Each specific ground for objection or defense to the Claim shall be listed

in a separate paragraph. Service of the objection shall be made upon the attorney of record for the Claimant (or the Creditor directly if not represented by an attorney), the attorney for the Debtor, and any other party entitled to notice under Local Rule 3007. A certificate of service shall be included in each objection and shall comply with Local Bankruptcy Rule 9013(f).

3.10    If an objection to a Claim is filed the holder of the Claim may file a response only within twenty-one (21) days from the mailing date set out in the certificate of service for the objection. Responses may take one of two forms, namely a consent to the objection, or a non-consenting response. A non-consenting response shall state specific reasons for objection to each ground or defense relied upon by the non-consenting party to support allowance of the Claim. Copies of such response shall be served upon the Debtor and his attorney, B. Weldon Ponder, Jr. Failure to timely file a response shall result in a deemed consent to the objection, and upon the expiration of the 21-day response period, the Court may enter an order without further notice or hearing. In the event a timely non-consenting response is filed, the Court shall set a hearing.

3.11    All Contested Claims shall be litigated to Final Order; provided, however, that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court and further provided that if a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

3.12    **Distributions on Disputed Claims.** If a Claim is not scheduled or is scheduled in the Debtor's Schedules of Liabilities as disputed, contingent or unliquidated, no distribution shall be made to the holder of such a Claim unless a proof of claim was filed by November 13, 2018, which was the Bar Date established by the Bankruptcy Court. In addition, no distribution shall be made to the holder of an Unsecured Claim so long as an objection to the Claim is pending; rather, the amount of the payment shall be held in reserve by the Debtor until the objection is resolved. If an objection to a Class 5 Unsecured Claim is sustained, the Debtor will distribute the amount of the Claim *pro rata* to the holders of the remaining Claims in Class 5 along with the next payment to Class, and shall re-calculate all future *pro rata* payments on each of the Class 5 Claims remaining. If an objection is overruled, at the next scheduled distribution under the Plan to the Class of Creditors into which the Claim falls, the Debtor shall pay the newly Allowed Claim a sum sufficient to bring that Claimant *in pari passu* with the other Claims in the Class.

3.13    If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of the Allowed Claim. In addition, any party authorized by the Code may request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to 11 U.S.C. § 502(c) at any time.

ARTICLE IV
**CLASSIFICATION OF CLAIMS AND INTERESTS**

4.01    **Classification.** Claims and interests are classified as follows:

**Class 1.** Allowed Administrative Claims.

**Class 2.** Allowed Secured Claim of Bank of America Secured by an RV Owned (or Previously Owned) by the Debtor

**Class 3.** Allowed Secured Claim of TIAA Bank, fully secured by a deed of trust first lien on the Debtor's Homestead.

**Class 4.** Allowed Claim of Wells Fargo Auto Finance secured by the Debtor's Chevy Suburban.

**Class 5.** Allowed General Unsecured Claims against the Debtor.

**Class 6.** The Debtor.

ARTICLE V
**TREATMENT OF CLAIMS AND INTERESTS**

5.01.    **Class 1 – Allowed Administrative Claims.**

5.01.01   The Allowed Amount of each Administrative Claim under § 503(b)(2) - (6) of the Bankruptcy Code shall be paid in cash in full on the later of (1) the Effective Date or (2) the date due, or upon such terms as may be agreed upon between the Debtor and the holders of such Claims. If not paid in full on the Effective Date, the Class 1 Claims shall accrue interest from and after the Effective Date at the rate applicable to each such Claim, if any, under applicable non-bankruptcy law.

5.01.02   As to the post-petition Administrative Expense Claim for ad valorem taxes owed to Travis County for the 2019 tax year, these taxes shall be timely paid in the ordinary course, with any penalties or interest ultimately accrued thereon. The liens for the 2019 tax year will be retained until all taxes, penalties and interest for that tax year are paid in full.

5.01.03   Class 1 is not Impaired.

5.02    **Class 2 – Allowed Secured Claim of Bank of America**. Bank of America ("BOA") filed a proof of claim asserting a Claim of $26,945.40 fully secured by a 2015 JAYCO 32BHDS recreational vehicle (the "RV") titled in the Debtor's name. The Secured Claim shall, will be satisfied, at BOA's option, by the Debtor's surrender of any interest in the RV and transfer, on the first date that is both the first business day of the month and at least 60 days after the Effective Date, of the title to the RV to BOA. Thereafter, BOA may proceed with *in rem* remedies to obtain possession of the RV and/or foreclose its security interest in accordance with applicable non-bankruptcy law.

5.02.01   BOA and the Debtor agree, and Confirmation shall act as the Court's determination, that BOA shall have an Allowed Unsecured Claim for a deficiency in the amount of $26,945.40 less any amount received by BOA if it locates and liquidates the RV. In the event BOA receives any funds for the RV, within 30 days of such receipt BOA shall amend its proof of

claim in the Case to reflect a credit for such funds. Any such Allowed Claim for a deficiency shall be treated as a General Unsecured Class 5 Claim.

5.02.02   BOA may send communications directly to the Debtor in connection with any proceeding against the RV including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout.

5.02.03   Except as provided herein, all remaining terms of BOA's loan documents shall govern the treatment of its Secured Claim and BOA's legal, equitable, and contractual rights shall remain unchanged with respect to its security interest in the RV.

5.02.04   BOA's Class 2 Claim is Impaired to the extent expressly provided herein.

5.03     **Class 3 – TIAA Bank's Allowed Claim of Secured by Debtor's Homestead.** The escrow shortage on the Class 3B Claim, if any, will be paid in full on the Effective Date. The Class 3 Claim will be paid in full according to the terms of the existing loan documents. The holder will retain the lien securing the Class 3B Claim until paid in full.

5.03.01   Class 3B is not Impaired.

5.04     **Class 4 – Allowed Claim of Wells Fargo Auto Finance Secured by the Debtor's Chevy Suburban.**   The Class 4A Claim will be paid in full, with interest at 5.0% per annum from and after the Effective Date, in 60 equal monthly payments of principal and interest. Regular payments according to the current terms of the loan documents shall continue to be made monthly until the first date that is both the first business day of the month and at least 30 days after the Effective Date. On such date all accrued unpaid interest shall be added to the outstanding principal and that amount re-amortized over 60 months with interest at 5.0% per annum. The first payment under the Plan shall be made one month later, on the first date that is both the first business day of the month and at least 60 days after the Effective Date, and payments shall thereafter continue every month on the first business day of the month. All other provisions of the documents governing the Class 4 Claim shall continue to apply. The holder will retain the lien securing the Class 3A Claim until it has been paid in full.

5.04.01   Class 4 is Impaired.

5.05     **Class 5 – Allowed General Unsecured Claims.**   Allowed General Unsecured Claims will be paid in full, in not more than 32 quarterly payments, with interest of 6.0% per annum from and after the Confirmation Date, from the Initial Payments and from Sale and Lease Proceeds Payments in lieu of, or after, the Initial Payments. The dates of the payments, and their amounts, are:

> The Initial Payments shall consist of interest-only payments made quarterly during the first six quarters of the Plan, commencing on the first date that is both the first business day of the month and at least 60 days after the Effective Date (estimated to be August 1, 2019, based on an estimated Effective Date of June 1, 2019), except that if a Sale or Lease Proceeds Payment is made during the first six quarters of the

Plan, no Initial Payment shall be made in the quarter in which the Sale or Lease Proceeds Payment is made or thereafter, as further described below.

The amount of each Class 5 Creditor's Initial Payment shall be its Pro Rata share of the entire Class 5 payment, which is estimated at $37,079 per quarter (except for the first Initial Payment, which will include interest accrued from the Effective Date to the date of payment, an amount which will be less than interest accrued for a full quarter). The final Initial Payments shall be made in the quarter preceding the first Sale or Lease Proceeds Payments, as provided below.

Sale and/or Lease Proceeds Payments: The Sale and Lease Proceeds Payments shall consist of distributions by the Reorganized Debtor of Bull Creek Explorer's share of the proceeds of D71's sale(s) and ground lease(s) of the Property,[1] net of the amounts needed to (1) establish and then maintain Bull Creek Explorer's reserve of $5,000, (2) pay the Debtor's then current personal expenses, and (3) establish and then maintain the Reorganized Debtor's reserve of not less than $12,250.

A Sale or Lease Proceeds Payment must be made within one calendar month of each date that Bull Creek Explorer receives its share of such proceeds; provided, however, that a Sale or Lease Proceeds Payment made during the first six quarters after the Effective Date may be held and distributed, in lieu of a quarterly Initial Payment, on the next scheduled due date of such Initial Payment. **At least one Sale or Lease Proceeds Payment must be made during the first six quarters following the Effective Date**.

The amount of each Class 5 Creditor's Sale or Lease Proceeds Payment shall be its Pro Rata share of the entire Class 5 payment. The General Unsecured Claims will continue to accrue interest at 6.0% per annum and each Sale or Lease Proceeds Payment shall be applied first to interest and then to principal.
Sale and Lease Proceeds Payments shall end on the earlier of: (1) the date all Class 5 Creditors have been paid in full with interest, or (2) the day before the eighth anniversary of the Effective Date.

Balloon Payment: If all Class 5 Creditors have not paid in full with interest by the eighth anniversary of the Effective Date, a final Balloon Payment consisting of all remaining amounts owed shall be due and payable on that date. The amount of each Class 5 Creditor's Balloon Payment shall be the total amount still owed to such Creditor on that date.

5.05.01   Class 5 is Impaired.

5.06   **Class 6 – Allowed Interests of the Debtor.** The Debtor shall retain all his property, subject to any Liens preserved under the Plan, and shall fund all of the payments under the Plan.

5.06.01   Class 6 is Impaired.

---

1. In the case of a triple net ground lease, D71 will reserve from the proceeds the amount paid by the tenant for property taxes, insurance and maintenance of the Property, prior to distributing to its members.

**EFFECT OF CONFIRMATION**

6.01     **Plan Binding.**  Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Debtor and each of his Creditors, whether or not the Creditor's Claim is impaired under the Plan and whether or not such Creditor has accepted the Plan. The distributions provided for Creditors shall not be subject to any claim by another Creditor by reason of any assertion of a contractual right of subordination.

6.02     **Status of Property upon Confirmation.** Property of the Estate shall vest in the Debtor, as the Reorganized Debtor, upon Confirmation.

6.03     **Termination of the Automatic Stay after Confirmation.** The automatic stay imposed under § 362 of the Bankruptcy Code terminates upon Confirmation, but because Confirmation of the Plan binds all Creditors (and the Debtor), so long as payments are being made in accordance with the Plan and Debtor is not otherwise in default under the Plan, Creditors are prohibited from taking any action to collect on their Claims except in accordance with the Plan's terms.

6.04     **Treatment of Unexpired Leases and Executory Contracts.**  To the best of the Debtor's knowledge, he had no executory contracts or unexpired leases as of the Petition Date. In the event there is such a contract or lease, it will be assumed upon Confirmation.

ARTICLE VII
**IMPLEMENTATION OF THE PLAN**

7.01     **In General.**  If the Plan is approved by the Bankruptcy Court, a Confirmation Order will be entered. The Debtor will continue to operate as a debtor in possession and discharge his duties under Chapter 11 until the Effective Date of the Plan, which is expected to occur fourteen days after the entry of the Confirmation Order. On and after the Effective Date, the Reorganized Debtor will operate in compliance with the terms of his confirmed Plan.

7.02.01 **Sources of Funds for Implementation of the Plan.** The sources of funds for the implementation of the Plan will be the Debtor's income from (1) distributions to him by Bull Creek Explorer, including distributions from its share of the proceeds of the sales or ground leases of D71's Property, and (2) from the Reorganized Debtor's possible sale or pledging of some or all of his property (3) distributions from the Trust from its share of the proceeds of the sales or ground leases of D71's Property; provided, however, that any such distributions shall be at the sole discretion of the Trust.

7.02.02 In particular, after Confirmation of the Plan, the Debtor will continue to work on behalf of D71 to market and sell and/or ground lease the Property. Upon such sales, D71 will make distributions to its partners, including Bull Creek Explorer which owns a 50% limited partnership interest. Bull Creek Explorer, in turn, after payment of its business expenses and the creation and maintenance of a reserve of $5,000 (in addition to the rent it collects in excess of the base rent, which will be held by it for taxes, insurance and maintenance of its rental property), will distribute that income and the income from its business of renting the Sixth Street Building to the Debtor as

Reorganized Debtor. From that amount, the Debtor will fund a reserve in an amount sufficient to cover his projected personal expenses but in no event less than $12,250 at any time, and will pay his personal expenses. The balance of his income from Bull Creek Explorer and the Trust will be used to make payments to Creditors in accordance with this Plan.

7.02.03 In addition, the Debtor as Reorganized Debtor in his sole discretion may sell or pledge any or all of his interest in Bull Creek Explorer and/or may sell his Homestead at any time during the term of the Plan, without notice to Creditors, reopening of the Bankruptcy Case or obtaining further order of the Bankruptcy Court, provided that any Claim secured by the property to be sold or pledged is paid in full at closing or the holder of such Claim consents to the sale or pledge and, in the case of a sale, agrees to release the Lien securing the Claim at closing.

7.02.04 Finally, the Trust, which is a holder of a 15% limited partnership interest in D71, may but is not obligated to distribute some or all of those funds to the Debtor to be used to pay his personal expenses, fund any shortfall in his reserve, and make Plan payments.

7.03 **Authorization.** The Reorganized Debtor shall be responsible for complying with the terms and provisions of the Plan as it may be modified as allowed by the Bankruptcy Code. To this end, the Reorganized Debtor is authorized and directed to execute all documents necessary to effectuate the terms of the Plan.

7.05 **Reliance on other Parties.** In connection with the Plan, the Reorganized Debtor may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by him and such reliance shall presumptively establish good faith.

ARTICLE VIII
**<u>MODIFICATION OF PLAN</u>**

8.01 **Pre-Confirmation Modification.** Modifications of the Plan may be proposed in writing by Debtor as its proponent at any time before Confirmation of the Plan, provided that such Plan as modified meets the requirements of §§ 1122 and 1123 of the Code, and that the Debtor has complied with § 1125 of the Code.

8.02 **Post-Confirmation Modification**. During the term of the Plan and before completion of the payments under the Plan, any holder of a General Unsecured Claim may request a copy of the Debtor's most recent federal income tax return. Both the Reorganized Debtor and any Creditor holding a General Unsecured Claim may, pursuant to § 1127(e), may request the Court to modify the Plan to increase or reduce the amount of the payments, to increase or reduce the time period over which the payments are being made, or to take into account payments on a Claim made from a source other than the Plan; provided, however, that the Plan as modified must meet the requirements of §§ 1122 and 1123 of the Code and the Court, after notice and hearing, must confirm such modified Plan under § 1129, and provided that the circumstances warrant such modification.

8.03 **Deemed Acceptance or Rejection.** A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as

modified unless, within any time limit fixed by the Court, such holder changes its previous acceptance or rejection.

ARTICLE IX
**POST CONFIRMATION MATTERS**

9.01    **Post-Confirmation Status Reports by the Reorganized Debtor.**

9.01.01   In a reorganization case like the Debtor's during which there is a duty to pay fees under 28 U.S.C. § 1930, Federal Rule of Bankruptcy Procedure 2015 and Local Bankruptcy Rule 2015 require that a report be filed, in a form prescribed by the United States Trustee, that includes a statement of any disbursements made during that month or quarter, as applicable, and of any fees payable under 28 U.S.C. § 1930 for that time period.

9.01.02   Thus, following Confirmation and until the Case is closed as described below, the Reorganized Debtor will file quarterly Operating Reports in the form prescribed by the United States Trustee. Besides the amounts of disbursements, those reports will also provide information on the Reorganized Debtor's income and payments to Creditors.

9.01.03   After the closing of the Case, the Reorganized Debtor shall prepare and serve semi-annual status reports on all Class 5 General Unsecured Creditors who request such service. Such reports shall describe in reasonable detail, to the extent not confidential, all efforts to sell and/or ground lease the Property and the results of those efforts, and shall include an accounting of all sales and ground lease proceeds of the Property received by D71, Bull Creek Explorer, and/or the Reorganized Debtor during that period and all payments on Claims made during the period.

9.02    **Application for Final Decree and Closing of the Case Prior to Completion of the Plan.**  The Reorganized Debtor may file an application for final decree, requesting the Court to close the Case, no sooner than the completion of the first payment to Creditors in Class 5 under the Plan. Unless requested by the Reorganized Debtor or another party in interest, including Creditors, to reopen the Case, it will remain closed until all payments to the holders of General Unsecured Claims have been made and the Reorganized Debtor requests the Court to reopen the Case to grant him a discharge.

9.03    **Discharge of the Debtor.**  The Debtor may request the Court to reopen the Case to grant him a discharge no sooner than the date that the amount proposed under the Plan to be paid on General Unsecured Claims has been paid in full. All Creditors will be given notice of, and an opportunity to be heard with respect to, such a request.

9.04    **Permanent Injunction.**  Discharge of the Reorganized Debtor shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Reorganized Debtor. From and after the date a discharge order is entered, all holders of Claims against the Reorganized Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Reorganized Debtor or his assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Reorganized Debtor or

his assets; (c) from creating perfecting, or enforcing any encumbrance or any kind against the Reorganized Debtor or his assets; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Reorganized Debtor except as may be allowed under Title 11; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however,* that each holder of a Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

9.05    **U.S. Trustee Matters.**

9.05.01    <u>Fees</u>. The Reorganized Debtor shall timely pay all bankruptcy fees required by 28 U.S.C. § 1930 until the Bankruptcy Case is closed, converted or dismissed and during the time the Case is reopened for the entry of the discharge.

9.05.02    <u>Reports</u>. The Reorganized Debtor shall timely file all post-confirmation reports required by Federal Rule of Bankruptcy Procedure 2015, in the form prescribed by the United States Trustee, until the Case is closed, converted or dismissed. In addition, at the time the motion for discharge is filed the Reorganized Debtor shall file a final report setting forth all of the payments made under the Plan.

ARTICLE X
**<u>DEFAULT</u>**

10.01    **Default by Reorganized Debtor.** Other than with respect to a default in connection with the Claims of Travis County, TIAA Bank, and Wells Fargo Auto Finance, the following shall apply in the event of a default by the Reorganized Debtor under the Plan. If the Reorganized Debtor defaults, Creditors may exercise any rights granted to them under any document executed to evidence the Plan, and any rights available to them under the Bankruptcy Code (such as the right to request conversion or dismissal of the Case under § 1112 and the right to request  modification of the Plan under § 1127(b) and/or (e)), or under applicable non-bankruptcy law. In the absence of documents executed to evidence the Plan, this Plan may be enforced as a contract. Notwithstanding any other provision, any Creditor alleging a default must give the Reorganized Debtor notice of such default and an opportunity to cure, to the Reorganized Debtor by first class U.S. mail, addressed to him at 1711 Meadowbrook Drive, Austin, Texas 78703, and by first class U.S. mail addressed to his attorney, B. Weldon Ponder, Jr., Attorney at Law, 4408 Spicewood Springs Road, Austin, TX 78759, and by email to welpon@austin.rr.com and clenox.law@gmail.com.  If the Reorganized Debtor fails to cure the default within 21 days of the date of mailing of the notice, or if he has defaulted and cured defaults twice before, Creditors may exercise their remedies as listed above. It should be noted that, if the Case has been closed, a motion to reopen the Case must be filed first in order to file any other motion. There is a fee, currently $1,717.00, to request reopening of a Chapter 11 case that the Creditor(s) making such a request will be required to pay in order to file that motion. Such a Creditor may request the Court to be reimbursed that cost by the Reorganized Debtor. In addition to these remedies in the Bankruptcy Court, Creditors may pursue their remedies against the Reorganized Debtor under applicable non-bankruptcy law in other courts.

10.02 **Reorganized Debtor's Default with Respect to Travis County's Claims.** With respect to Travis County's Claims for 2019 taxes, if not paid in full as provided in Paragraph 5.01.2 above, Travis County is immediately permitted to exercise any or all its state law collection rights, for all amounts due by the Debtor, without further recourse to the Bankruptcy Court.

10.03 **Debtor's Default with Respect to TIAA Bank's and Wells Fargo Auto Finance Secured Claims.** The default provisions under applicable Texas law and in the pre-petition loan and security documents between the Debtor and TIAA Bank and between the Debtor and Wells Fargo Auto Finance shall apply to such Creditors' respective Allowed Secured Claims (the Class 3 Claim and the Class 4 Claim, respectively) and the default provisions of Paragraph 10.01 above shall not apply to such Creditors' Claims, except that the amounts and timing of the payments and the interest rate on the Class 4 Claim that are provided in Paragraph 5.04 above shall be substituted for those in the loan and security documents.

10.04 **Additional Remedy for Creditors Holding General Unsecured Claims.** In addition, in the event of the Reorganized Debtor's default under the Plan any holder of a General Unsecured Claim may request to reopen the Case if it is closed, as provided above, and to modify the Plan pursuant to 11 U.S.C. § 1127(e). According to that provision, modification is available only to:

(a) increase or reduce the amount of payments on Claims of a particular Class provided for by the Plan;

(a) extend or reduce the time period for such payments; or

(c) alter the amount of the distribution to a Creditor whose Claim is provided for by the Plan to the extent necessary to take account of any payment of such Claim made other than under the Plan.

ARTICLE XI
**RETENTION OF JURISDICTION**

11.01 **Jurisdiction over Matters.** At any time when the Case is open, the Court shall retain jurisdiction to hear and determine all Claims against the Debtor arising prior to the Confirmation Date, to hear and determine all causes of action arising prior to the Confirmation Date that may exist in favor of the Debtor, to hear and determine all matters relating the administration of the Debtor's Estate or the Reorganized Debtor's property, to modify the Plan, and to enter such other orders as are necessary or appropriate to enforce the Plan or effectuate its provisions in accordance with § 1142 of the Code, including interpretation and implementation of the Plan, entry of a final decree and order closing the Case, a Creditor's request to reopen the Case and, upon motion of the Reorganized Debtor to reopen the Case, entry of the discharge order.

ARTICLE XII
**MISCELLANEOUS**

12.01 **Request for Relief under 11 U.S.C. § 1129(b)**. In the event any impaired Class fails to accept this Plan in accordance with 11 U.S.C. § 1129(a), the Debtor reserves the right to, and does hereby request the Court to, confirm the Plan in accordance with 11 U.S.C. § 1129(b).

12.02 **Revocation.** The Debtor reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

12.03 **Effect of Withdrawal or Revocation.** If the Debtor revokes or withdraws this Plan prior to the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

12.04 **Entire Agreement**. The Plan as described herein and in the Disclosure Statement, the Confirmation Order, and all other documents and instruments to effectuate the Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

12.05 **Payments.**

12.05.01 <u>Pre-Payment and Settlement of Claims</u>. The Debtor may pre-pay any Claim, in whole or in part, at any time, except pre-payment of the Classes 3B and 4 Claims will be governed by the pre-payment provisions, if any, in the loan documents governing those Claims. In addition, any Claim may be compromised by agreement between the Creditor and the Reorganized Debtor, at any time during the term of the Plan, without notice or order of the Court.

12.05.02 <u>Delivery</u>. Any payments or distributions made by the Reorganized Debtor pursuant to the Plan or as may be ordered by the Bankruptcy Court, to the extent delivered by the United States mail shall be deemed made when deposited into the mail. Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth the on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed) unless the Creditor files with the Court and serves the Debtor and his attorney with a change of address. Any distributions returned to the Debtor as undeliverable shall increase the distributions to the other Creditors in that Class, if any, and if there are none, shall become property of the Reorganized Debtor and the claim of any other person with respect to such unclaimed property shall be discharged and forever barred.

12.05.03 <u>Voided Checks</u>. Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made to the Debtor's attorney, B. Weldon Ponder, Jr., at 4408 Spicewood Springs Road, Austin, Texas 78759, and by email to <u>welpon@austin.rr.com</u>, by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check must be made to the Debtor's attorney in writing within 180 days after the date of delivery of such check. After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall be returned to the Debtor.

12.06 **Governing Law.** Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

DATED this 11th day of March, 2019.

Respectfully submitted,

_____/ s / William Archer_____
William C. Archer, Debtor in Possession
and Plan Proponent

DRAFTED AND APPROVED:

B. WELDON PONDER, JR.
Attorney at Law
State Bar of Texas No. 16110400
4408 Spicewood Springs Road
Austin, Texas 78759
512.342.8222 / 512.342.8444 fax
email: welpon@austin.rr.com

CATHERINE LENOX
Attorney at Law
State Bar of Texas No. 12204350
P.O. Box 9904
(512) 689-7273 / (512) 697-0047 (fax)
Austin, Texas 78766
email: clenox.law@gmail.com

ATTORNEYS FOR DEBTOR

## CERTIFICATE OF SERVICE

I, B. Weldon Ponder, Jr., counsel for the Debtor in Possession, hereby certify that a true and correct copy of the foregoing Second Amended Plan of Reorganization Dated March 11, 2019, was served on March 11, 2019, electronically through the Court's ECF notification system upon each of the following persons at the following addresses:

Stephen K. Lecholop II
Rosenthal Pauerstein et al.
755 East Mulberry, Suite 200
San Antonio, TX 78212
at slecholop@rpsalaw.com,
ecarrillo@rpsalaw.com and
lchapa@rpsalaw.com

Robert Grawl, Jr., Asst Gen. Counsel
People's United Equip. Finance Corp.
1300 Post Oak Blvd., Suite 1300
Houston, TX 77056
at brgrawl@financialfederal.com

Kay D. Brock
Assistant County Attorney
P.O. Box 1748
Austin, TX 78767
at kay.brock@traviscountytx.gov

Diane W. Sanders
Linebarger Goggan et al.
P.O. Box 17428
Austin, TX 78760-7428
at austin.bankruptcy@publicans.com

United States Trustee – AU12
at ustpregion07.au.ecf@usdoj.gov

and by email on the following persons at the following addresses:

William C. Archer
1711 Meadowbrook Drive
Austin, TX 78703
at williamcarcher@gmail.com.

Deborah Bynum, Trial Attorney
Office of the United States Trustee
903 San Jacinto Blvd., Rm. 233
Austin, TX 78701
at Deborah.A.Bynum@usdoj.gov

Stephen K. Lecholop II
Rosenthal Pauerstein et al.
755 East Mulberry, Suite 200
San Antonio, TX 78212
at slecholop@rpsalaw.com

Alonzo Z. Casas
Aldridge Pite, LLP
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
at acasas@aldridgepite.com

_/s/ Weldon Ponder_____.
B. Weldon Ponder, Jr.